# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| DAVID LINT,<br><br>      Petitioner,<br><br>vs.<br><br>ELIZABETH ROBINSON,<br><br>      Respondent. | No. C05-0136<br><br>**REPORT AND RECOMMENDATION** |

_____

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      A.  Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      B.  Direct Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
      C.  State Application for Postconviction Relief . . . . . . . . . . . . . . . . . . 4
      D.  Federal Application for a Writ of Habeas Corpus . . . . . . . . . . . . . . 4

III.  FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.  STANDARDS OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
      A.  Standard of Review Under 28 U.S.C. § 2254(d)(1) . . . . . . . . . . . . . . 8
      B.  Requirement of Exhaustion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

V.  DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
      A. Admission of the Videotape . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
          1.  Whether the Iowa Court of Appeals Reasonably Held
              That Lint Did Not Have the Right to Counsel . . . . . . . . . . . 12
          2.  Whether Admitting Footage of Lint's Post-Miranda
              Request for an Attorney Was Prejudicial . . . . . . . . . . . . . . . 15

VI.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## I. INTRODUCTION

On August 8, 2005, David Lint filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Northern District of Iowa (docket number 5). On November 11, 2005, this matter was referred to the undersigned for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) (docket number 23).

In his application for a writ of habeas corpus, Lint makes two claims. First, Lint claims he received ineffective counsel assistance of counsel at trial. Second, Lint claims the trial court violated his constitutional rights under the Fifth Amendment by admitting videotape evidence containing footage of Lint repeatedly requesting a lawyer. Lint has since withdrawn his first claim (docket number 19). Therefore, the second claim is before the court on Lint's brief regarding his application for a writ of habeas corpus (docket number 20) and the respondent's brief (docket number 21).

## II. PROCEDURAL BACKGROUND

### A. Trial

In the Iowa District Court in and for Linn County, David Lint was charged with crimes of Operating While Intoxicated ("OWI"), Operating a Motor Vehicle While License Under Suspension; and Interference With Official Acts. State v. Lint, No. OWCR 38392 (Linn County Dist. Ct. 2001).[1] The State also charged Lint with being an OWI-Third Offender and a Habitual Offender.

Prior to trial, on August 13, 2001, Lint pleaded guilty to the crime of Operating a Motor Vehicle While License Under Suspension. He also filed a motion in limine,

---

[1] Iowa state court criminal and civil records may be accessed at the following address: www.judicial.state.ia.us/online_records/. See Stutzka v. McCarville, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (addressing court's ability to take judicial notice of public records).

attempting to limit evidence of his prior-criminal acts and the videotaped statements he made while in custody. District Court Judge Douglas S. Russell held a hearing on the motion in limine and ruled that evidence of Lint's prior-criminal acts could be used for impeachment purposes and that the videotape was admissible. Lint proceeded to trial that day. On August 14, 2001, the jury found Lint guilty of OWI and not guilty of Interference With Official Acts. Lint waived a jury determination on his status as an OWI-Third Offender and a Habitual Offender. On August 14, 2001, the court entered a supplementary guilty verdict on these two counts.

On October 19, 2001, Lint filed a motion for a new trial. Lint claimed that the trial court erred in admitting a videotape of his booking because the videotape contained audio of Lint repeatedly requesting counsel. On October 22, 2001, Lint amended his motion for new trial and additionally claimed that the trial court erred when it ruled that Lint's prior felonies could be used for impeachment purposes. On October 26, 2001, the district court denied Lint's new trial motion.

The Iowa District Court in and for Linn County sentenced Lint on October 26, 2001. The court sentenced Lint to an indeterminate term not to exceed fifteen (15) years and fined Lint $2,500 for the OWI-Third Offense-Habitual Offender conviction. The court also sentenced Lint to a concurrent, indeterminate term not to exceed one (1) year and fined Lint $1,000 for Operating a Motor Vehicle While License Under Suspension.

### B. Direct Appeal

Lint appealed his conviction, arguing that the district court erred in admitting the videotape of his booking because it contained footage of him requesting counsel. Lint also argued that his trial counsel was ineffective in failing to properly advise him regarding his decision to take the stand. On March 26, 2003, the Iowa Court of Appeals affirmed Lint's conviction and preserved Lint's claim of ineffective assistance of counsel for postconviction-relief proceedings. State v. Lint, 665 N.W.2d 440 (Iowa Ct. App. 2003). The Iowa Supreme Court denied Lint's application for further review.

3

### C. State Application for Postconviction Relief

On July 30, 2003, Lint applied for postconviction relief pursuant to Iowa Code Chapter 822 in the Iowa District Court in and for Linn County. Following an evidentiary hearing, Judge David M. Remley denied Lint's application for postconviction relief. Lint filed an appeal. On May 25, 2005, the Iowa Court of Appeals affirmed Judge Remley's decision. Lint v. State, 699 N.W.2d 685 (Iowa Ct. App. 2005). The Iowa Supreme Court denied Lint's application for further review.

### D. Federal Application for a Writ of Habeas Corpus

On August 8, 2005, Lint filed an application for a writ of habeas corpus (docket number 5). In his application, Lint asserted two grounds for relief. First, Lint asserted that his trial counsel was ineffective in advising Lint not to testify. Second, Lint asserted that the district court violated his Fifth Amendment rights by admitting the videotape of his booking because it contained footage of Lint repeatedly requesting a lawyer. On November 21, 2005, the respondent filed an answer to Lint's application for habeas corpus (docket number 9). On August 10, 2006, Lint withdrew from consideration his ineffective trial counsel claim (docket number 19). On August 10, 2006 Lint filed a brief on the merits supporting his application (docket number 20-1). On September 5, 2006, respondent filed a brief on the merits in opposition to the application (docket number 21).

### III. FACTUAL BACKGROUND[2]

On October 26, 2000, Linn County deputy sheriff Mark Strait received a report of a reckless driver near Cedar Rapids. The report described the suspect vehicle as a dark-colored pick-up truck with a ladder on the back. Strait spotted a vehicle matching that

---

[2] The facts and evidence are summarized in the light most favorable to the verdict. See Hendricks v. Lock, 238 F.3d 985, 986 (8th Cir. 2001); Copeland v. Washington, 232 F.3d 969, 971 (8th Cir. 2000); Mallet v. Bowersox, 160 F.3d 456, 458 (8th Cir. 1998). Additional facts, i.e., the specific incidents of alleged prosecutorial misconduct and ineffective assistance of counsel will be discussed in the court's analysis where relevant.

description and proceeded to follow it. He observed the vehicle swerving within its lane and crossing the fog line. Strait decided to stop the vehicle and turned on his emergency lights. The vehicle, however, did not pull over. Strait followed the vehicle for approximately two miles with his emergency lights on before the driver pulled over. In that time, the driver of the truck changed lanes and continued to drive in the manner that led Strait to pull the truck over.

After the vehicle pulled over, Strait approached the truck and determined that there was only one person occupying it. This person was later identified as David Lint. Strait asked Lint for his license. Lint claimed that he did not have it with him, but told Strait that he had a Pennsylvania license. Lint then produced an Iowa vehicle registration with the name Dennis Lint, which is not the petitioner's name. This was the only identification Lint gave to Strait.

Strait testified that there was an odor of alcohol in the vehicle and Lint's speech was slurred. When Strait asked Lint if he had been drinking, Lint told Strait that he drank three beers before leaving Burlington, Iowa. Based on his observations, Strait decided to perform field-sobriety tests on Lint. Lint failed the tests and Strait arrested him for Operating While Intoxicated (OWI). While Strait had Lint pulled over, Officer Harvey Caldwell of the Cedar Rapids Police Department arrived at the scene. He remained with Lint's truck when Strait and Lint left in Strait's vehicle. Caldwell inventoried Lint's truck and between the seats, Caldwell found four cold cans of beer in a six-pack ring. He did not find the two missing cans.

Strait took Lint to the Linn County jail. At the jail, Strait and Ray Brecht, the officer in charge of booking individuals for OWI that evening, gave Lint an opportunity to take a breathalyzer test and booked him. The entire process was videotaped. Throughout the procedure, Lint repeatedly asked to call his lawyer. When asked what his name was, Lint replied that he wanted to call his lawyer. When Strait attempted to give Lint his implied-consent opportunity to a breathalyzer test, Lint stated that he refused to

do anything until he talked to his lawyer, even though such refusal meant that Lint forfeited his license for one year. At Lint's request, Brecht gave Lint a phone book to find the number for his lawyer. Lint looked up the number and Brecht dialed it. There was no answer. Brecht offered to call another attorney, however, Lint refused. Strait asked Lint again if he would like to call someone else for legal advice. Lint refused again, claiming that he did not know if Brecht even called the right number. The officers redialed Lint's attorney, putting the ring on speaker phone so that Lint could verify that no one answered. Again, no one answered. Lint argued that he still did not know what number the officers dialed and continued to ask for his lawyer. After arguing about whether the officers dialed the proper number, Lint signed the implied-consent form stating that he would not take a breath test. Next to his signature he wrote "no lawyer." Brecht then read Lint his <u>Miranda</u> rights. Lint continued to request that he speak to his lawyer. Ultimately, he was booked and charged with OWI, Operating a Motor Vehicle While License Under Suspension; and Interference With Official Acts. Additionally, the State subsequently charged Lint as being an OWI-Third Offender and a Habitual Offender.

Prior to trial, Lint pleaded guilty to Driving While License Under Suspension. He also filed a motion in limine seeking to keep out any and all references to statements made while he was in custody and any references to his past-criminal acts. He specifically attempted to keep out the audio portion of the videotape of the booking and implied-consent procedure. Lint argued that the audio portion of the videotape contained evidence of his desire to speak to an attorney. He argued that admitting this evidence would violate and be an improper comment on his Fifth Amendment rights under the U.S. Constitution as well as his corresponding rights under the Iowa Constitution. The district court overruled the motion and found that the probative value of the evidence "outweigh[ed] any possible prejudice to [Lint]" (Trial 17).

A jury trial on the OWI and Interference With Official Acts charges commenced on August 13, 2001. Strait, Caldwell, and Brecht testified to the events of October 26,

6

2000. The jury, over Lint's objection, also saw and heard the videotape of Lint's booking. On August 14, 2001, the jury returned a verdict finding Lint guilty of OWI and not guilty of Interference With Official Acts. Lint waived a jury determination on the issues of his status as an OWI-Third Offender and a Habitual Offender. On August 14, 2001, the court entered a supplementary guilty verdict on these two counts.

## IV. STANDARDS OF REVIEW

Lint asserts that the Iowa courts unconstitutionally admitted evidence showing that he repeatedly requested a lawyer. He claims he is entitled to habeas relief because this was an improper comment on his constitutional right to contact an attorney. This court evaluates applications for habeas relief under 28 U.S.C. § 2254(d), the Anti-terrorism and the Effective Death Penalty Act of 1996 (AEDPA). Title 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"[28 U.S.C. §] 2254(d) distinguishes between two types of erroneous decisions—those of law and those of fact—and treats each in separate subparagraphs." Weaver v. Bowersox, 241 F.3d 1024, 1029 (8th Cir. 2001). Claims of legal error are governed by the first subparagraph while claims of factual error fall within the second subparagraph. See id. at 1029-30. Lint's application only implicates § 2254(d)(1) because the issue for this habeas application is purely a question of law and Lint does not dispute the facts relating to his claim.

## A. Standard of Review Under 28 U.S.C. § 2254(d)(1)

Under 28 U.S.C. § 2254(d)(1), an applicant may obtain federal habeas corpus relief with respect to a claim adjudicated on the merits in state court only through a showing that the state court's decision was either contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. The Supreme Court's opinion in Williams v. Taylor, 529 U.S. 362 (2000), explains the meaning of those statutory concepts and the degree of deference that must be afforded to state court determinations on the merits in federal habeas corpus proceedings concerning state prisoners under the AEDPA. See Newman v. Hopkins, 247 F.3d 848, 850-52 (8th Cir. 2001) (discussing effect of Williams); Siers v. Weber, 259 F.3d 969, 972-73 (8th Cir. 2001) (same); see also Ryan v. Clark, 387 F.3d 785, 790 (8th Cir. 2004) (stating only limited and deferential review of underlying state court decisions in habeas corpus cases is permitted).

Under Williams, a state-court decision can be "contrary to" Supreme Court precedent in one of two ways: (1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or (2) "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that precedent]." Williams, 529 U.S. at 405. Further, "the [statutory] phrase 'clearly established Federal law, as determined by the Supreme Court of the United States' . . . refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id. at 412.

An "unreasonable application" of Supreme Court precedent can also arise in one of two ways. The Supreme Court explained:

> First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the

8

> state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Id. at 407 (citing Green v. French, 143 F.3d 865, 869-70 (4th Cir. 1998)). Thus, where a state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular . . . case," that decision "certainly would qualify as a decision 'involving an unreasonable application of . . . clearly established federal law.' " Id. at 407-08. Notably, however,

> [u]nder [28 U.S.C.] § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas [corpus] court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

Id. at 411.

Applying these standards to the present case, the court's inquiry must be whether the Iowa courts reached a decision contrary to that reached by the Supreme Court on a question of law, or alternatively, whether the Iowa court correctly identified the applicable principles of federal law and then unreasonably applied that law to the facts of Lint's claims. See, e.g., Rousan v. Roper, 436 F.3d 951, 955-56 (8th Cir. 2006) (discussing applicable standard); Newman, 247 F.3d at 850-52 (same); Weaver v. Bowersox, 241 F.3d 1024, 1029-30 (8th Cir. 2001) (same); Closs v. Weber, 238 F.3d 1018, 1020 (8th Cir. 2001) (same); Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (same).

## B. Requirement of Exhaustion

A petitioner, before obtaining federal habeas corpus review of his or her state confinement, must first "exhaust" his or her federal claims in the appropriate state forum.

9

28 U.S.C. § 2254(b)(1).[3] A petitioner has exhausted his or her state remedies when he or she has provided the highest state court with a full and fair opportunity to consider all the claims before presenting them to the federal court. Vasquez v. Hillery, 474 U.S. 254, 257 (1986); Anderson v. Harless, 459 U.S. 4, 6 (1982); Picard v. Connor, 404 U.S. 270, 276; Miller v. Lock, 108 F.3d 868, 871 (8th Cir. 1997); Ashker v. Leapley, 5 F.3d 1178, 1179 (8th Cir. 1993); McDougald v. Lockhart, 942 F.2d 508, 510 (8th Cir. 1991) see also 28 U.S.C. § 2254(c).[4] In Iowa, exhaustion requires a petitioner to seek discretionary review from the Iowa Supreme Court after the Iowa Court of Appeals rejects an appeal argument. See O'Sullivan v. Boerckel, 526 U.S. 838, 845-48 (1999) (abrogating Dolny v. Erickson, 32 F.3d 381 (8th Cir. 1994)).

The fair presentment component of the exhaustion requirement compels a petitioner to affirmatively:

> refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.

---

[3] 28 U.S.C. § 2254(b)(1) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
> (A) the applicant has exhausted the remedies available in the courts of the State, or
> (B) (i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

[4] 28 U.S.C. § 2254(c) provides:

> An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

Ashker, 5 F.3d at 1179 (quotations and citations omitted); accord Thomas v. Wyrick, 622 F.2d 411, 413 (8th Cir. 1980). A claim is not fairly presented to the state courts unless the same factual grounds and legal theories asserted in the prisoner's federal habeas corpus application have been properly raised in the prisoner's state court proceedings. Keithley v. Hopkins, 43 F.3d 1216, 1217 (8th Cir. 1995); Flieger v. Delo, 16 F.3d 878, 884 (8th Cir. 1994); see also Keeney v. Tamayo-Reyes, 504 U.S. 1, 8, 112 S. Ct. 1715, 118 L. Ed. 2d 318 (1992) (full and fair presentment of claims to the state court requires "full factual development" of the claims in that forum); Barrett v. Acevedo, 169 F.3d 1155, 1162 (8th Cir. 1999) ("Presenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement.").

"The purpose of the fair presentation component of the exhaustion requirement is to give state courts the first opportunity to review federal constitutional issues and to correct federal errors made by the state's trial courts." Laws v. Armontrout, 834 F.2d 1401, 1412 (8th Cir. 1987); see also Duncan v. Henry, 513 U.S. 364, 365 (1995) (per curiam) (same). If a petitioner has not fully presented his or her federal claims in state court, the claims are barred in federal court and must be dismissed, unless the petitioner can either show both good cause for his or her failure to present the claims in state court and actual prejudice as a result of the alleged constitutional violation or demonstrate that failure to review the claim would result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991);Maynard v. Lockhart, 981 F.2d 981, 984 (8th Cir. 1992); Maynard v. Lockhart, 981 F.2d 981, 984 (8th Cir. 1992); Buckley v. Lockhart, 892 F.2d 715, 718 (8th Cir. 1989).

## V.  DISCUSSION

### A.  Admission of the Videotape

Lint argues that his conviction should be reversed because the trial court improperly admitted a videotape containing footage of him repeatedly requesting a lawyer. He claims

this was an unconstitutional comment on his right to counsel. The Iowa Court of Appeals, however, held that under U.S. Supreme Court precedent, Lint did not have a constitutional right to counsel when he requested an attorney in the videotape. Lint, 2003 WL 1523545, at **2. Therefore, the court upheld Lint's conviction and held that the district court did not err in admitting the booking videotape. Id. at 1-2.

Lint contends that the Iowa Court of Appeals unreasonably applied Supreme Court precedent to reach its conclusion and that the court's holding was contrary to clearly established federal law. Further, he claims that the court's error was prejudicial. Therefore, he argues that his application for habeas relief should be granted.

### 1. Whether the Iowa Court of Appeals Reasonably Held That Lint Did Not Have the Right to Counsel

The constitutional right to counsel is well established. The Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This "right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated . . . ." Kirby v. Illinois, 406 U.S. 682, 688 (1972). The Supreme Court "[has] never held that the [Sixth Amendment] right to counsel attaches at the time of arrest." U.S. v. Gouveia, 467 U.S. 180, 190 (1984). Therefore, Lint acknowledges that his Sixth Amendment right to counsel had not yet attached when the officers booked him and gave him.

Nevertheless, Lint correctly notes that the U.S. Supreme Court has derived a further right to counsel in its "jurisprudence relating to the Fifth Amendment guarantee that '[n]o person . . . shall be compelled in any criminal case to be a witness against himself.' " McNeil v. Wisconsin, 501 U.S. 171, 176 (1991). This Fifth Amendment right to counsel can attach during police questioning, prior to the attachment of a person's Sixth Amendment right to counsel. See Miranda v. Arizona, 384 U.S. 436, 467-71 (1966) (establishing the Fifth Amendment right to counsel and applying to the states); see also Malloy v. Hogan, 378 U.S. 1 (1964) (holding that the Fifth Amendment right against self-

12

incrimination applied to the states through the Fourteenth Amendment Due Process Clause).

Lint claims in his habeas application that the district court violated his Fifth Amendment right to counsel when it admitted the booking videotape. In Miranda, the Court established the Fifth Amendment right to counsel as a "prophylactic right[] designed to counteract the 'inherently compelling pressures' of custodial interrogation" that might lead a defendant to forego his or her rights excepting self-incrimination. McNeil, 501 U.S. at 176; Miranda, 384 U.S. at 467-71 (1966). Therefore, the Court held that an "individual held for interrogation . . . has the right to consult with a lawyer and to have the lawyer with him during interrogation." Miranda, 384 U.S. at 471. In Edwards v. Arizona, the Court further held that under Miranda, "[o]nce a suspect asserts the right [to counsel], not only must the current interrogation cease, but he may not be approached for further interrogation 'until counsel has been made available to him.' " McNeil, 501 U.S. 176-77 (1991) (quoting Edwards v. Arizona, 451 U.S. 477, 484-85 (1991)).

The Fifth Amendment right to counsel, however, does not attach to situations that do not amount to interrogation. See Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980). The Miranda safeguards only "come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." Id. at 300-01. The functional equivalent includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Id. at 301. Further the Supreme Court held in Pennsylvania v. Muniz that police are not interrogating a person if their "questions fall within a 'routine booking question' exception which exempts from Miranda's coverage questions to secure the 'biographical data necessary to complete booking or pretrial services.' " Pennsylvania v. Muniz, 496 U.S. 582, 601 (1990) (internal citations omitted).

13

In Lint's appeal, the Iowa Court of Appeals held that the officers in Lint's booking videotape were "only inquiring of Lint the 'biographical data necessary to complete booking or pretrial services.'" Lint, 2003 WL 1523545, at **1 (quoting Muniz, 496 U.S. 600). Therefore, applying Muniz, the court held that the events captured in the videotape did not constitute an interrogation and, therefore, "Lint's request for an attorney precede[d] the attachment of his Fifth Amendment right to counsel." Id. at **2. Lint argues that because he asked for counsel, his right to counsel should have attached independent of the fact that he was not being interrogated.

With regard to Lint's statements before the officers read him his Miranda rights, the Iowa courts did not reach a decision contrary to that reached by the Supreme Court on a question of law, or alternatively, incorrectly identify the applicable principles of federal law and then unreasonably apply that law to the facts of Lint's case. Lint cannot point to any Supreme Court precedent or established federal law showing that he had a right to counsel prior to or independent of being interrogated. Instead, Supreme Court precedent and applicable federal law show that the Fifth Amendment right to counsel does not attach in the absence of interrogation. The Iowa courts' conclusion that Lint was not being interrogated in the video is supported by the evidence on the record. The officers in the video did not subject Lint to express questioning or attempt to elicit incriminating responses from him before he was read his Miranda rights. Instead, the officers were securing the biographical data necessary to complete booking and pretrial services. This conduct falls under the Muniz booking exception.

However, the parties have stipulated that the Iowa courts erred in admitting video footage of Lint requesting an attorney after Lint was read his Miranda rights. Because the Iowa courts' decisions were clearly erroneous, this court proceeds to determine whether such error was prejudicial.

## 2. Whether Admitting Footage of Lint's Post-Miranda Request for an Attorney Was Prejudicial

The United States Code provides that "judgments shall not be reversed for 'errors or defects which do not affect the substantial rights of the parties.'" Chapman v. California, 386 U.S. 18, 22 (1967) (quoting 28 U.S.C. § 2111). Thus, cases are not overturned for harmless errors. Where a court has found a constitutional error in a state case and the state court did not conduct a harmless-error analysis, the reviewing court applies the standard of review that the Supreme Court set forth in Chapman v. California. Juarez v. Minnesota, 217 F.3d 1014, 1016 (8th Cir. 2000) (internal citations omitted); Chapman, 386 U.S. at 24. Under Chapman, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Chapman, 386 U.S. 24. The burden of proving that the error is harmless is on "the beneficiary of [the] constitutional error" and such beneficiary must "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Id.

In this case, the state was the beneficiary of the courts error because the court admitted the state's videotape evidence. Lint argues that the state cannot prove beyond a reasonable doubt that the error was harmless because he alleges that the video footage of his post-Miranda requests for counsel contributed to his conviction. The state contends that this footage was cumulative and without it, Lint would have nevertheless been convicted.

The court may evaluate the strength of the government's case as a factor in determining whether a court's erroneous admission of evidence was prejudicial. See United States v. Watler, 416 F.3d 1005, 1010 (8th Cir. 2006) (examining government's evidence to determine whether an evidence error would was harmless). Additionally, the court may find that cumulative evidence is harmless. See Hendrickson v. Norris, 224 F.3d 748, 751 (8th Cir. 2000) (holding that "withdrawn testimony was essentially cumulative,

15
Case 1:05-cv-00136-JAJ   Document 22   Filed 02/20/07   Page 15 of 17

convincing [the court] beyond a reasonable doubt that its absence did not contribute to the verdict").

Given the evidence on the record, this court is convinced beyond a reasonable doubt that it was harmless error for the Iowa courts to admit the videotape containing Lint's post-<u>Miranda</u> requests for an attorney. There was sufficient evidence on the record without the post-<u>Miranda</u> videotape footage for a reasonable jury to convict Lint of OWI. There was a report of a truck driving recklessly which matched the description of Lint's truck. Officer Strait testified that he saw Lint swerving within his lane and over the fog line before deciding to pull Lint over. Strait also testified that he followed Lint with his lights on for nearly two miles before Lint finally pulled over. Upon approaching the car, Strait testified that he smelled alcohol and that when asked, Lint admitted to drinking a few beers prior to driving. Lint failed sobriety tests conducted by Strait and Officer Caldwell found beer in Lint's car. Brecht testified that when he booked Lint, his speech was slurred and he was uncooperative and belligerent. This behavior was captured on the pre-<u>Miranda</u> videotape.

Further, Lint's post-<u>Miranda</u> requests for counsel, which Lint claims influenced the jury, were cumulative of similar earlier statements. Prior to being read his <u>Miranda</u> rights, Lint requested counsel multiple times. Any improper footage showing Lint requesting counsel after being read his <u>Miranda</u> rights only showed requests identical to those made before being read his <u>Miranda</u> rights. Therefore, the additional comments were not prejudicial and Lint is not entitled to relief on this claim.

## VI. CONCLUSION

In sum, Lint is not entitled to relief pursuant to 28 U.S.C. § 2254. The Iowa courts' adjudication of Lint's claim prior to being read his <u>Miranda</u> rights neither resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law nor resulted in a decision based on an unreasonable determination of the facts

in light of the evidence presented. Further, any error that might have occurred by showing the video of Lint's requests after he was read his Miranda rights was harmless beyond a reasonable doubt. Accordingly, this court recommends that Lint's application for a writ of habeas corpus be denied.

For the reasons discussed above, **IT IS RECOMMENDED**, unless any party files objections[5] to the Report and Recommendation within ten (10) days of the date of the report and recommendation, that the Petitioner's application for a writ of habeas corpus be denied.

February 20, 2007.

JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT

---

[5]Any party who objects to this report and recommendation must serve and file specific, written objections within ten (10) court days from this date. A party objecting to the report and recommendation must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections.